[Crim. No. 3396. In Bank.—August 25, 1931.]

THE PEOPLE, Respondent, v. PETER FARRINGTON, Appellant.

Nathan C. Coghlan and Edmond H. Tomasney for Appellant.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Mathew Brady, District Attorney, Har-

mon D. Skillen and J. J. McMahon, Assistants District Attorney, for Respondent.

WASTE, C. J.—Peter Farrington, accused of the crime of murder in having, on or about April 29, 1930, killed John Malcolm, a police officer of the city and county of San Francisco, was convicted of murder in the first degree, and the death penalty was imposed. It was also charged in the information that, prior to the present offense, Farrington, under another name, had been convicted of assault with intent to commit robbery in San Francisco, and, under still another name, had been convicted of the crime of ''violently stealing'' in British Columbia. Farrington at first denied that he had suffered the two prior convictions of felony, but subsequently withdrew his denial and admitted the two priors. Motion for a new trial was made and denied.

On April 29, 1930, Max Kahn, office manager of the California Stevedore and Ballast Company, and Maurice Murphy, paymaster of the same company, alighting from a taxicab near the office of the company on pier 26 on the waterfront in San Francisco, were held up and robbed of $3,200, the amount of the pay-roll just drawn from a bank. Two men perpetrated the actual robbery, while one remained in an automobile close by. During the course of the robbery, John Malcolm, a San Francisco police officer, sought to aid Kahn and Murphy, and was shot and killed. The murderer and his accomplices escaped from the scene in the waiting automobile. Some time later, the appellant was arrested in the state of Washington and afterward returned to San Francisco for trial. From the judgment of conviction and order denying his motion for a new trial the defendant appeals.

The most important question presented for consideration on appeal concerns the sufficiency of the identification of the appellant. Certain other objections to the legality of the conviction are advanced, but the real question is whether or not there is, in the record, evidence upon which the jury was warranted, as a matter of law, in finding that the appellant was the actual perpetrator of the crime.

The appellant was identified by the witness Gibson, driver of the taxicab which took Kahn and Murphy to the office of the stevedoring company, and who stated that the defendant answered the description of one of the two men who

perpetrated the actual holdup; and was the one who asked him if he had a "rod" [pistol], and searched him for a gun. The appellant was definitely identified by the witness as the "one that did the shooting", and also by another witness, Brehmer, in the employ of the freight department of the American-Hawaiian Steamship Company, who watched the struggle between the police officer and the appellant, at which time the appellant had a gun in his hand. William Hales, another witness, who saw the officer shot, identified the defendant in the courtroom. Christian Clausen, superintendent of the stevedoring company, identified the appellant as the man he saw pull a gun "out of his pocket and put it in Kahn's stomach". He was very positive that the defendant was the man. Henry Hade, a clerk in the employ of the American-Hawaiian Steamship Company, was another witness to the robbery who testified "he heard a scuffle and ran to the door from which he saw the officer and a fellow with a gun . . . an armed man holding the officer's arm and . . . telling the officer to turn around". He identified the appellant as the man who fired the gun.

The appellant testified that he was not present on the occasion of the shooting, but was in the city of Stockton visiting an unnamed woman. He could only show, however, that he registered at a hotel in Stockton about noon of the day following the killing of Malcolm. He challenges the sufficiency of the identification, and analyzes various parts of the testimony in support of his contention that the identification witnesses testified in a manner "and to things incompatible with their assertion to that effect". Uncertainties in the testimony of other witnesses are pointed out, and discrepancies in the testimony of others are referred to.

The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction. (*People* v. *Erno,* 195 Cal.

272, 283 [232 Pac. 710].)   On the record before us, we cannot say that this is such a case.

■ Complaint is made by the appellant that the court unduly denied him the right to test the degree of certainty of the witness Gibson as to the identity of the robbers whom he saw on pier 26 just preceding the shooting of the policeman. The specified questions, to which objections of the prosecution were sustained, were addressed to what the witness would do if he sat as a juror in the case, and whether or not, if he had been asked, he would have sworn to a complaint in the case charging appellant with the commission of murder. While these questions, if answered, might in an indirect way have tested the faith of the witness in his own testimony, we deem the questions irrelevant. The matter was sufficiently gone into, and no prejudicial error resulted to the defendant.

■ The defendant, on cross-examination, having brought out the fact that Murphy, the paymaster, talked to the manager, Kahn, who was with him at the time of the occurrence, about what had transpired in connection with the holdup and shooting, was, we think, entitled to a wider range of cross-examination on that subject. The trial court sustained the objection of the prosecution without giving any reason, and the prosecution now offers no sufficient reason why the cross-examination was curtailed. However, as Murphy and Kahn were the victims of the holdup, and it having been brought out that they did talk about the happening, as might readily be presumed they would, common knowledge of the jurors no doubt enabled them to appreciate the fact that the two men had probably gone fully into all that transpired, and compared notes as to what occurred.

■ The court refused to give an instruction submitted by the defendant in which were closely related the question of the sufficiency of the identity of the assailant of the deceased and the question of reasonable doubt in the minds of the jurors. The court, however, did give an instruction of its own covering the duty of the jurors in considering the evidence as to the identity of the defendant, and in other parts of the charge sufficiently covered the questions of presumption of innocence, reasonable doubt, and the duty of the jurors in considering all the evidence in the case.

■ The court properly refused to given an instruction requested by the defendant to the effect that, if the jurors entertained a reasonable doubt whether defendant was guilty of manslaughter or murder, they might find the defendant guilty of manslaughter. It is neither necessary nor proper for the court, on a trial on an indictment for murder, to give the definition of manslaughter or to tell the jury that it may find the defendant guilty of manslaughter, unless there is evidence in the case tending to prove that the crime was or may have been manslaughter. Instructions are always to be given with reference to the facts proved before the jury. (*People* v. *Byrnes*, 30 Cal. 206, 207.) The deceased police officer was killed by an assailant engaged in the perpetration of a robbery, and, under the facts in evidence, the defendant was guilty of murder in the first degree (Pen. Code, sec. 189), or not guilty.

■ When the appellant was arrested in Washington a number of personal articles were found in a suitcase in his room, among them a .38 caliber pistol, a holster and belt. The pistol was admitted in evidence on the offer of the prosecution, apparently in connection with the testimony of Brehmer, an eye-witness to the shooting, that "having served in the army, [he] was able to recognize the gun on the day as a .38 caliber gun", and that the weapon introduced in evidence "resembled it". A bullet removed from the body of the dead police officer by the autopsy surgeon was merely marked "for identification". Just before the close of the trial the defense reopened its case and offered the bullet in evidence, also without any explanation or giving any reason for the offer. It was admitted, whereupon, and just as the evidence in the case was being closed, counsel for the defendant requested permission to submit the bullet to "some person who is either an expert on ballistics or an expert with the microscope", for the purpose of ascertaining whether or not the bullet "could possibly have been ejected from a pistol having the riflings" of the pistol in evidence. The court denied the request on the ground that the case had been set for trial for more than a month and a half, and the defense had had ample time in which to make such an experiment if it had desired to do so; and that such action would delay the trial. Such requests are addressed to the discretion of the trial judge, and in the absence of a

prejudicial refusal such a denial will not work a reversal on appeal. We have read all the evidence about the pistol and the bullet, and cannot see that the denial of appellant's request resulted in any prejudicial or material harm to his case.

The shooting of the police officer occurred in San Francisco on April 29, 1930. It was therefore not error for the trial court to sustain the objection of the prosecution to the testimony of appellant's father that he knew where the appellant was going from the city of Los Angeles about eighteen days before the killing took place. Such evidence was irrelevant and immaterial. Questions propounded to the witness Brehmer by the defense, on cross-examination, as to whether or not he was subpoenaed to appear at the coroner's inquest in the matter of Malcolm's death, were addressed to another irrelevant and immaterial matter, and the trial court properly sustained the objection of the prosecution thereto.

By the verdict the jury found the defendant "guilty of murder of the first degree", but did not decree in their verdict that he should suffer the extreme penalty. Because of this form of the verdict, appellant challenges the jurisdiction of the trial court to impose the death sentence. The contention is without merit. When the crime of murder of the first degree is found by the jury, without recommendation as to the punishment the defendant shall suffer, the law imposes the death penalty. (Pen. Code, sec. 190; *People* v. *La Verne*, 212 Cal. 29 [297 Pac. 561].) The jurors were fully instructed as to the form of the verdict they should render if they decided that the defendant should suffer death as punishment for the crime he committed.

By the use of excerpts from the transcript, appellant seeks to challenge the fairness and impartiality of the trial judge. Read alone and in the way appellant would have us read them, such extracts from the record appear to sustain appellant's charge. But, read with the context and in the light of the entire record of the trial, these excerpts fail of the purpose for which they are quoted. We find that the trial judge was fair and just to both the prosecution and the defense. He conducted the trial with commendable expedition, but withal he was patient and even

kindly disposed toward all the parties and counsel for both sides.

Appellant has been fairly and justly convicted of the wanton killing of a peace officer in the discharge of his duty. The judgment of conviction and the order denying the motion for a new trial are, and each is, affirmed.

Shenk, J., Langdon, J., Seawell, J., Preston, J., and Curtis, J., concurred.

Rehearing denied.