[Crim. No. 4304. Second Dist., Div. One. June 7, 1949.]

THE PEOPLE, Respondent, v. JOSEPHINE ALEXANDER, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused in two separate counts of the offenses of grand theft, the grand theft from the person. The information also charged the defendant with a prior felony conviction which was admitted.

In view of the fact that the jury was unable to agree on the verdict as to count I and that the same was subsequently dismissed, it is unnecessary to here set forth the facts thereof.

Count II charged that the defendant on or about the 18th day of June, 1948, did wilfully, unlawfully, and feloniously take from the person of Kalman Kovatch $90.

Following the entry of a plea of not guilty and trial before a jury, a verdict was returned finding the defendant guilty of the aforesaid offense charged in count II. From the judgment of conviction on count II defendant prosecutes this appeal.

Stating the facts in the light most favorable to the prosecution, as we are required to do following a guilty verdict, the record reflects testimony that Kalman Kovatch was in an automobile returning home from his work at about 12 o'clock midnight. He was proceeding west on Santa Barbara and thence south on Figueroa Street until he stopped for a signal

at 42d Place and Figueroa Street. He was alone in his automobile. While stopped for the signal, defendant opened the door of the automobile and asked for a ride for a couple of blocks. Before the witness had a chance to answer defendant was inside the car and after riding a block or so, she put her hand on his legs at the thigh, saying, "How about a good time?" to which the witness replied, "I am going home." Defendant then said to him, "Turn in here. I live in here." When defendant alighted from the car, the prosecuting witness proceeded to light a cigar, reached into his pocket and discovered that all of his papers were out on the seat. He thereupon took out his wallet, looked inside and found that his money was missing, whereupon he saw a night watchman and the two of them gave chase but failed to apprehend the defendant. The witness testified that the last time he examined his wallet prior to missing the money was at his place of employment some 15 or 20 minutes before he departed for home. That at that time he had between $75 and $90 in the wallet, "probably $90.00." During his testimony the witness was asked, "Did you know that she had taken any until you opened your wallet and saw that it was gone?" to which he replied, "No."

Some two or three weeks subsequent to the night of the alleged theft, the witness Kovatch saw appellant standing on a corner and called a police officer. Upon arrival of the latter he asked, "This the girl who picked your pocket," whereupon, with reference to this incident and question the prosecuting witness testified, "I look at her. I just don't exactly know the law what going to happen with me. I pick up something I am not positively sure of the girl. . . ."

A few days later, at the same location, 42d Place and Figueroa Street, the prosecuting witness stopped his automobile and gave the defendant a ride again. After entering his automobile she put her hand upon his person saying, "How about a little fun?" At this time he told her to wait a minute as he had to go into a liquor establishment to see a friend, but defendant left the car at once. Kovatch again called the police but defendant had disappeared. The next night he observed her again and called the police, but she again disappeared. The following night a couple of police officers "staked out" and defendant was arrested.

The witness testified that the second time defendant was in his automobile she was wearing a red coat, and on cross-examination he testified:

"A. But I was afraid to make the arrest before I sure, because she was dressing entirely different way, you know; I know the face, but I still got doubt and when this Monday I got enough evidence on her when she put again the hand on my legs and telling me, 'You want a good time?' I know that is the girl. And she was over, same clothes, red coat next day and day after until she got arrested."

Police Officer Edward Charles Krueger testified to a conversation with the defendant on the day of her arrest, in the course of which he questioned her concerning various crime reports in his possession. She stated that she knew nothing about any people's pockets being picked, but that she would be glad to make some restitution rather than go to jail.

Defendant took the stand and denied being in the car with the complainant or doing any of the things testified to by him. In support of her claimed alibi, defendant testified that she was at her sister's residence making hats for a celebration that was to take place on June 19. She admitted talking to Officer Krueger and that she did not tell him that she was at her sister's home the night of the alleged theft, giving as the reason therefor that at the time of the conversation with the officer she did not recall that she was at her sister's. Defendant's sister was called and testified that the former was with her on the night of June 18 making hats for the occasion above referred to and remained there until "the small hours of the morning."

As grounds for a reversal, appellant urges, (1) the evidence is insufficient to justify the verdict and the verdict is contrary to the law and the evidence; (2) the prosecutor was guilty of misconduct by which a fair trial was prevented; and (3) the court erred in certain instructions given and refused.

In support of her first ground for reversal, appellant urges insufficiency of the evidence because of the asserted weakness of the testimony given by the prosecuting witness in his identification of appellant, his uncertainty about the amount of money in his possession, and because there was no evidence to show that appellant ever had possession of any money belonging to the prosecuting witness.

We must approach this contention in the light of the well established rule that before an appellate tribunal can set aside the verdict of the jury upon the ground now under consideration, the conclusion reached in the court below must be shown to be devoid of sufficient substantial evidence, upon

any hypothesis whatever, to support it. And in the appellate court there must be an assumption in favor of the verdict of the existence of every fact which the jury could have reasonably deduced from the evidence (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

On the question of identification of the perpetrator of the crime, it has been repeatedly held by the courts of this state that such a question is essentially one for determination by the triers of fact, and that their verdict or decision will not be set aside unless the appellate court can say as a matter of law that there was no substantial evidence to support the conviction (*People* v. *Ash,* 88 Cal.App.2d 819, 825 [199 P.2d 711]; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Hightower,* 40 Cal.App.2d 102, 106, 107 [104 P.2d 378].) Unless it can be said that the evidence of identity was so weak as to constitute practically no evidence at all, an appellate court is not entitled to set aside a jury's finding of guilt (*People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402].) In the instant case appellant has not met the burden imposed upon her to show that the identification evidence is inherently unbelievable. The claimed inconsistencies and uncertainties in the testimony of the prosecuting witness were matters which should have been directed to the attention of the jury, and cannot be urged upon appeal (*People* v. *Skaggs,* 80 Cal. App.2d 83, 97 [191 P.2d 390]; Code Civ. Proc., § 1847).

What we have just said is equally applicable to the testimony in support of appellant's defense of alibi. The jury was authorized to stamp this testimony as false.

The fact that the prosecuting witness did not testify that he saw appellant actually take his money is of little consequence. Taken as a whole, the evidence most cogently tends to prove that appellant took the money, and whether it was $75 or $90 is immaterial.

Appellant next assigns as prejudicial misconduct the fact that on cross-examination of her, the prosecutor asked the following questions concerning a conversation which on direct examination she had stated she had with an investigating officer:

"Q. As a matter of fact he talked to you about some other cases which involved the offense of pickpocket, didn't he? A. Yes, sir.

"Q. A number of other cases? A. Yes, sir.

"Q. Now you know something about pickpocketing, don't you?"

Appellant's counsel started to interpose an objection but before he could state the specific grounds therefor the court promptly sustained the same. Appellant contends that notwithstanding her failure to request the court to admonish the jury and instruct them to disregard the question and not to draw any inferences from the same, the resultant prejudice to appellant was such that the harmful result thereof could not be obviated by appropriate instructions. This contention cannot be sustained. We are fully satisfied that in the case at bar the prejudicial effect, if any, on the jury could have been cured by proper instruction of the court. It was therefore appellant's duty to request an appropriate admonition by the court. Appellant may not predicate error in this court in the absence of an assignment of alleged misconduct of the prosecution and a request to the trial court to instruct the jury (*People* v. *DuBois,* 16 Cal.App.2d 81, 87 [60 P.2d 190] ; *People* v. *Davidson,* 23 Cal.App.2d 116, 120 [72 P.2d 233] ; *People* v. *Agnew,* 16 Cal.2d 655, 660 [107 P.2d 601]). Whether the substantial rights of a defendant have been prejudiced by the misconduct of a prosecutor must rest largely upon the facts of each case. And a reversal may ensue only when it is made to appear that there has been a miscarriage of justice (*People* v. *Braun,* 14 Cal.2d 1, 7 [92 P.2d 402]). The instant case presents no such situation.

Appellant next contends that the trial court erred to her prejudice in refusing to give a proffered instruction on circumstantial evidence, wherein direction would be given the jury as to the necessity for establishing each fact, beyond a reasonable doubt, which is essential to complete the chain of circumstances tending to establish the crime charged. Where a case rests entirely or chiefly upon circumstantial evidence it is proper and desirable that some direction be given the jury as to the foregoing rule of law. It is now, however, firmly established in our law that where, as here, the prosecution relied upon direct evidence describing the circumstances under which the complainant was relieved of his money by appellant, and the circumstantial evidence was merely incidental to and corroborative of the direct evidence, an instruction on the law of circumstantial evidence need not, and indeed, should not be given (*People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545] ; *People* v. *Savage,* 66 Cal.App.2d 237, 247 [152 P.2d 240] ; *People* v. *Holden,* 13 Cal.App. 354, 359 [109 P. 495]).

We have examined the instructions given and find no error therein. The court defined every element of the offense charged clearly and correctly. The jury was admonished that it was to be governed solely by the evidence, and it was also instructed on the presumption of innocence, reasonable doubt and burden of proof.

For the reasons herein stated, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 17, 1949, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1949. Carter, J., and Schauer, J., voted for a hearing.