[Crim. No. 4433.   Second Dist., Div. One.   May 10, 1950.]

THE  PEOPLE,  Respondent,  v.  CHARLES  RICHARD
MUNOZ, Appellant.

Leland E. Zeman for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson,
Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District
Attorney of Los Angeles County, defendant was charged with
the crime of robbery and that at the time of the commission
of said offense he was armed with a deadly weapon, to wit, a
revolver. It was also alleged in the information that at the
time of his arrest for the offense therein charged, he was armed
with a concealed deadly weapon, to wit, a revolver. This latter
charge, being armed with a concealed deadly weapon at the
time of his arrest, was subsequently stricken.

Following trial by jury, appellant was found guilty of rob-
bery in the first degree. From the judgment of conviction he
prosecutes this appeal.

The sole contention of defendant on this appeal being that
the verdict is contrary to the weight of the evidence, it becomes
necessary to epitomize the factual background which gave

rise to this prosecution. The record reflects testimony that on the evening of April 21, 1949, at about 4:30 o'clock, Andrew A. Demetriou was working alone in his retail liquor store in the city of Santa Monica. That the defendant entered the front of the store while no one else other than the proprietor was there. A light was burning in the store at the time. Mr. Demetriou walked out front to wait on the defendant. When the former got behind the counter he asked the latter what he could do for him. Whereupon defendant pointed a gun at Demetriou saying, ''Give me the money.'' At that time defendant was about 2 or 3 feet from the store proprietor. When defendant pointed the gun at Demetriou the former placed his right elbow on his forehead but prior to this time there was nothing concealing defendant's face from Demetriou's view. The latter then asked defendant what he wanted him to do and was told to ''put the money in the bag.'' The store proprietor took the money out of the cash register, estimated to be approximately $20, and put it in a bag. Defendant then said, ''Give it to me,'' with which demand Demetriou complied. Defendant ''put the bag of money inside his shirt'' with his right hand, which was the hand he previously had on his forehead. Defendant then asked Demetriou for a pint of whiskey, which the latter put into a bag and gave to defendant. The latter, using his right hand, put the whiskey ''between'' his shirt. He was holding the gun with his left hand. Defendant then asked Demetriou to give him some more money but the latter stated that it was all that he had, showing defendant his wallet. Thereupon, defendant told him ''to go back, to get out.'' When Demetriou got about 3 feet from the front door defendant compelled him to return to the rear of the store. During this time defendant dropped his gun and when it hit the floor ''it exploded—went off.'' Thereupon defendant picked up the weapon and ran out. Later that evening after the arrest of defendant, the witness Demetriou went to the police station where he identified defendant in a so-called ''lineup.'' Demetriou identified a gun shown to him at the trial as the one defendant used in the robbery and the weapon was introduced into evidence.

Peter A. Breceda, a police officer, testified that about 8 o'clock on the evening of the robbery he arrested the defendant at an auto park. Upon searching him the officer found a gun inside defendant's shirt. The gun was the one that was identified by the liquor store proprietor as the one used in the rob-

bery. It contained five shells, one of which was ''spent'' at the time of the arrest. There was testimony by another officer that when he received the gun from Officer Breceda, it contained four ''live'' shells and one ''spent.'' Officer Donatelli testified that during the evening following the robbery he examined the liquor store and found a bullet hole in the wall about three inches above the floor.

Another police officer, Robert G. Holbrow, testified that he had a conversation with the defendant on the morning following the latter's arrest and that upon questioning him with regard to the robbery the defendant stated that he had no knowledge of any robbery.

In answer to interrogatories concerning his whereabouts on the preceding afternoon, the defendant replied that he left home at about noon with his father's revolver, taking the same from the father's home without permission; that he took the weapon to Ocean Park in an attempt to sell it but had been unable to dispose of it.

Testifying as a witness in his own behalf, defendant stated that some days previously he had discussed the sale of a gun with a stranger whom he met at an employment office. That subsequently this stranger came to the defendant's home in connection with the purchase of a gun; that the gun belonged to the defendant's father. That the ostensible purchaser had asked defendant to permit him to take the weapon for the purpose of trying it out. That on the afternoon of the day of the robbery at about 3 or 3:30 o'clock defendant testified he met the prospective purchaser who returned the gun to the defendant stating that he had no desire to purchase it because it was too big and heavy. Defendant testified that he then continued to walk around Ocean Park in an attempt to sell the gun and that at about 6:30 o'clock he was arrested with the weapon in his possession. He denied participation in the robbery, stating he was elsewhere at the time. He admitted, however, that the gun which was introduced into evidence and identified by the liquor store proprietor as the one used in the robbery was in his possession on that day.

In support of his sole ground for reversal, appellant urges insufficiency of the evidence because of the asserted weakness of the testimony given by the prosecuting witness in his identification of appellant; that there was no showing that the gun found in his possession at the time of his arrest was the gun used in the robbery of the liquor store.

Our approach to this contention must be in the light of

the well-established rule that before an appellate tribunal can set aside the verdict of the jury upon the ground now under consideration, the conclusion reached in the court below must be shown to be devoid of sufficient substantial evidence, upon any hypothesis whatsoever, to support it. Furthermore, in this court, there must be an assumption in favor of the verdict of the existence of every fact which the jury could have reasonably deduced from the evidence (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).

The claimed weakness of the testimony identifying him as a participant in the crime charged is answered by what this court said in *People* v. *Alexander,* 92 Cal.App.2d 230, 234 [206 P.2d 657], as follows:

"On the question of identification of the perpetrator of the crime, it has been repeatedly held by the courts of this state that such a question is essentially one for determination by the triers of fact, and that their verdict or decision will not be set aside unless the appellate court can say as a matter of law that there was no substantial evidence to support the conviction (*People* v. *Ash,* 88 Cal.App.2d 819, 825 [199 P.2d 711]; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Hightower,* 40 Cal.App.2d 102, 106, 107 [104 P.2d 378].) Unless it can be said that the evidence of identity was so weak as to constitute practically no evidence at all, an appellate court is not entitled to set aside a jury's finding of guilt (*People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402].) In the instant case appellant has not met the burden imposed upon her to show that the identification evidence is inherently unbelievable. The claimed inconsistencies and uncertainties in the testimony of the prosecuting witness were matters which should have been directed to the attention of the jury, and cannot be urged upon appeal (*People* v. *Skaggs,* 80 Cal.App.2d 83, 97 [191 P.2d 390]; Code Civ. Proc., § 1847)."

With reference to appellant's testimony in an attempt ·to establish an alibi, what we have just said is equally applicable. The jury was authorized to stamp this testimony as false.

Except in prosecutions for perjury and treason, direct evidence of one witness who is entitled to full credit is sufficient proof of any fact (Code Civ. Proc., § 1844). In a case such as the present one, where there is positive direct testimony that the appellant was the perpetrator of the crime, it is incumbent upon him to show that the testimony is inherently unbelievable in order to prevail. "A statement, to bear upon its face the

brand of improbability, or which may be said to be unbelievable, *per se*, must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do." (*People* v. *Haydon*, 18 Cal.App. 543, 555 [123 P. 1102, 1114]). Considering all of the evidence in the case now engaging our attention, it cannot be said, as a matter of law, that the testimony of the liquor store proprietor was so improbable as to be devoid of all belief.

What we have hereinbefore said is equally applicable to appellant's contention that there was no showing that the gun found in his possession at the time of his arrest was the gun used in the holdup of the liquor store, thus rendering the admission of the gun into evidence irrelevant. Furthermore, the record does reveal that the liquor store proprietor testified that he recognized the gun introduced into evidence and that it was the gun used by appellant at the time of the robbery. On cross-examination this witness stated that he saw rust on the gun used in the holdup, and in the trial court he pointed to a rust spot on the gun introduced into evidence. The witness also pointed to a little rod underneath the barrel of the gun as a distinguishing feature which had made an impression on his mind. There was also testimony that there was but one "spent" shell in the weapon. The claimed inconsistencies and uncertainty in the testimony of the prosecuting witness were matters which should have been directed to the attention of the jury, and cannot be successfully urged upon appeal (*People* v. *Skaggs, supra*, p. 97). Furthermore no objection was made at the trial to the introduction of the weapon into evidence. The failure to object in the trial court amounts to a waiver of any objection that might have been made to its admission (*People* v. *Cucco*, 85 Cal.App.2d 448, 453 [193 P.2d 86]; *People* v. *Garnier*, 95 Cal.App.2d 489, 502 [213 P.2d 111]).

From what we have hereinbefore said, it follows that on appeal in this case, appellant's contention that the evidence, both direct and circumstantial, is insufficient to establish his guilt, cannot prevail. The evidence against appellant if believed is clearly sufficient to support the jury's conclusion that he was the perpetrator of the robbery charged against him. The rule applicable on appeal, where there is evidence, circumstantial or otherwise, that a crime has been committed

and that the defendant was the perpetrator thereof, is succinctly set forth in *People* v. *Newland* (*supra*, p. 681).

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.