[Crim. No. 5193.   Second Dist. Div. One.   Nov. 8, 1954.]

THE PEOPLE, Respondent, v. FERNANDO EDWARD ARENAS, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and Theodore S. Tabah, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was accused of the crime of assault with intent to commit rape, a felony, upon a female person under the age of 18 years.

Following the entry of a plea of not guilty, trial by jury was duly waived and the cause proceeded to trial before the court. Primarily, the People's case was submitted on the transcript of the preliminary examination, but other testimony was introduced by both the prosecution and defense. Defendant was adjudged guilty. From the judgment of conviction and the sentence imposed, defendant prosecutes this appeal.

We regard the following as a fair epitome of the evidence adduced at the trial: On the night of October 16, 1953, the complaining witness attended a football game at Leuzinger High School in Lawndale, Los Angeles County. During the half-time intermission in the game, and while the complainant

was walking behind the bleachers, a young man approached and engaged her in conversation. She asked the man for a cigarette and he told her there were some in his automobile. They thereupon proceeded to the vehicle, a 1946 Ford, entered the same and seated themselves on the rear seat.

Shortly after entering the automobile, according to the testimony of the prosecutrix, her companion began "getting smart" with her, put his arms around her and commenced kissing her. She struggled with him and he declared his intention of then and there having sexual intercourse with her. During the struggle the man beat the complaining witness about the eyes, mouth, neck and chest. Her assailant "touched" her thigh, according to the witness, and "could have," but she did not "think" he did touch her private parts. Finally, the complainant freed herself, left the automobile, ran through the gate of the football field where she encountered a girl friend to whom she related what had occurred. The latter, as well as the mother of the prosecutrix, testified that she was bruised and bleeding after the foregoing altercation, and that she complained of a sexual assault upon her. Four other witnesses similarly described the complainant's physical appearance. This testimony was corroborated by a photograph taken of the young lady shortly after the alleged assault.

The victim testified that while defending herself against her assailant she bit him and scratched him upon the face.

With regard to the matter of identification, the prosecutrix gave the following testimony:

"Q. Miss Barcus, some time after that Friday night on which you had been to the football game you went to the Lennox Substation, didn't you? A. Yes.

"Q. At that time you saw Mr. Arenas, didn't you? A. Yes.

"Q. Didn't you say that he was not the man that was with you at the football game? A. I didn't say that. I wasn't sure."

Later she testified:

"Q. Afterwards, the officers talked to you, didn't they? A. No, they brought the man in the room and I told my story and I heard him say something, and I was positive then.

.    .    .    .    .    .    .    .

"Q. When did you make up your mind that Mr. Arenas was the man you were in the car with? A. Right when I heard him speak.

"Q. You hadn't heard him speak up to that time? A. That is right.

"Q. That is the only way in which you recognized him was the sound of his voice? A. No, he was short. I remembered that and just by the picture of him.

. . . . . . . .

"Q. What is there about this defendant that makes you positive he is the man you were with that evening? A. He looks like him. He talks like him. He is short, about the same build."

The victim further testified that it was dark when she talked to defendant and walked to the car. She was able, however, to distinguish his features. He was dressed in dark clothing, and had a long-sleeved shirt on.

James Patrick Hammond testified that during the half-time intermission at the football game or shortly thereafter, he saw the defendant come out from behind the bushes which were located at the side and rear of the automobile. He stated there was sufficient lighting around defendant's face, that he had a bruise under the right eye, and that he was sure the defendant was the man. The high school boys asked the defendant if he was the one who beat up the girl and the defendant said, "No, it wasn't me" and the boys left saying, "Well, it didn't matter to us."

The witness identified the defendant as having a dark shirt or jacket on and wedge shoes.

Ronald Howver testified that during the half-time or commencement of the third quarter his party, two girls, Buddy Smith and himself, left the game. He could not say for sure whether the defendant was the man he observed at the game, but that defendant looked like that person. He had three scratches below his right eye, about three inches long, and running from back toward the jawbone under the cheek. His friend, Buddy Smith, asked the person what he was doing to the girl. Defendant said, "Nothing."

Jolly Richard Stroup testified about half-time or thereafter he saw the defendant come out from behind the bushes, stand next to him, and although he didn't see any scratches on him he stated that there was a shadow on his face. He stated the defendant was wearing dark pants and a dark jacket.

Bob Alley testified that while walking around at half-time or a little after commencement of the second half, he saw defendant behind a hedge. He did not notice any marks on

him, but believed there was a scar on him. Defendant was dressed in black pants, windbreaker jacket and wedge shoes.

Richard Carroll, a deputy sheriff of Los Angeles County, testified he saw defendant's hands on October 17, 1953, shortly after his arrest, at Lennox Station, and saw cuts on the knuckles of the second and third finger and also saw scratches on his face. The scratches were on the right side of the face, high on the cheek bone coming down to the lower part of the jaw. A photograph of defendant's right hand introduced into evidence, showed what appeared to be cuts on his knuckles.

Douglas Robertson testified he was a special officer the night of the game. Upon receiving information concerning the 1946 Ford he investigated same. He testified as to blood-stains found therein, the broken right window and the presence of a blue jacket in the car. It was stipulated by defendant that the jacket belonged to him.

As a witness in his own behalf, defendant testified that on the night in question he attended the aforesaid football game, accompanied by three friends; that they were riding in a 1946 Ford sedan, and after entering the stadium were seated on the "center" side thereof. That the only time they left the stand was during the third period of the football game when they went to the rest room. They met two other friends. That he did not leave the field until after the game was over. After the game he went home with his friends Rios and Carillo. He testified that the first time he saw the complaining witness was in the Lennox Station when the police officers brought the girl in the office where he was seated; that the complaining witness looked him up and down and shook her head. At the time he was placed under arrest he had scratches on his face and hands, which he testified were caused three or four days prior to October 16, 1953, by his wife, during the course of an argument with her.

He denied being in an automobile with the complaining witness. Denied being behind a hedge or bush. Denied going back to the car during the football game. And also denied owning a black shirt or windbreaker. He stated his black jacket got into the car as he took it with him when he left for the game but left it in the car when he arrived at the game.

On cross-examination defendant admitted he had been convicted of a felony two weeks prior, the felony being forcible rape.

Defendant's wife testified that prior to the evening here in question, during an argument, she had scratched him "on his right cheek, his face . . . his knuckles." That on the evening in question, before he left for the football game, defendant had these scratches upon his person.

Danny Perez, Ascension Garcia, and Benjamin Guarjardo testified that they were with the defendant during the entire football game and that the only time they left the bleachers was during the third quarter to go to the rest room. They did not leave the game until after it was concluded. Upon cross-examination they admitted telling police officers on the night of October 16, 1953, that Arenas was not with them on that night, their reason being that they did not wish to involve the defendant, in that they had beer in the car upon school grounds.

Danny Perez answered he was "willing to lie that night" rather than involve another member of the party. Ascension Garcia testified he loaned the defendant his red jacket after the game, yet told the officers on the night of October 16, 1953, he did not know to whom the jacket belonged.

Alfred Rios testified he left the game with the defendant and went home with him after the game was over and that the only time the party left the bleachers was to go to the rest room, which was underneath the bleachers.

In rebuttal, Douglas Robertson testified that he worked as a special officer during the football game. He stated the rest room is located on the extreme west end of the football field some 50 yards away from the bleachers and the only other rest room is located at the extreme end of the south side, which is the opposite side of the field, underneath the bleachers.

Ronald Wade testified he saw the defendant walking alone near the malt shop while the game was in progress and he was dressed in a dark coat which was black or blue. That although he couldn't positively identify the defendant, the lighting condition was good in the area and the party looked like the defendant.

Ronald Howver testified he saw the defendant near the end of the game walking across the street from the malt shop alone. Although he is not certain it was the defendant he was "pretty sure" it was.

We have narrated the testimony at some length because appellant does not challenge the fact that the offense charged in the information was perpetrated but earnestly and vigor-

ously challenges the identification of himself as the perpetrator thereof.

Not only does appellant contend that the evidence is insufficient to support the judgment of conviction because of failure of identification, but he asserts that the witnesses testifying in his behalf accounted for his conduct and whereabouts during the time when the attack upon the prosecutrix occurred.

■ An appellate tribunal in approaching consideration of the contention that a finding of guilt should be set aside on the ground of ''insufficiency of the evidence,'' must be guided by the rule announced in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], as follows: '' '. . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusions reached in the court below . . . ■ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ■ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)''

■ As has so often been repeated, appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact but purely one of law.

■ Appellant's contention that he was not placed by the complaining witness at the scene of the crime in that her identification was not positive is answered by the fact that other witnesses positively identified him as the person who emerged, shortly after the attack, from behind the hedge located near the place of the alleged assault. ■ In determining a similar contention urging insufficiency of the evidence because of the asserted weakness of the testimony given by the prosecuting witness as to identification of the accused, this court said in *People* v. *Alexander*, 92 Cal.App.2d 230, 234 [206 P.2d 657] : ''On the question of identification of the perpetrator of the crime, it has been repeatedly held by the courts of this state that such a question is essentially one for determination by the triers of fact, and that their verdict or decision will not be set aside unless the appellate court can

say as a matter of law that there was no substantial evidence to support the conviction. (Citations.) Unless it can be said that the evidence of identity was so weak as to constitute practically no evidence at all, an appellate court is not entitled to set aside a jury's finding of guilt. (Citation.) In the instant case appellant has not met the burden imposed upon her to show that the identification evidence is inherently unbelievable. ■ The claimed inconsistencies and uncertainties in the testimony of the prosecuting witness were matters which should have been directed to the attention of the jury, and cannot be urged upon appeal. (Citations.)

■ "What we have just said is equally applicable to the testimony in support of appellant's defense of alibi. The jury was authorized to stamp this testimony as false."

■ While the claimed weakness in the testimony of the witnesses for the prosecution as to identification, as well as other claimed weaknesses in their testimony, undoubtedly afforded ground for a forceful argument to the trier of facts, nevertheless, they cannot avail appellant as ground for reversal because the evidence identifying an accused as the perpetrator of the crime charged need not be positive and uncontradicted (*People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; Wharton's Criminal Law, vol. 2, p. 1776; *People* v. *Rolfe,* 61 Cal. 540, 543). ■ While some of the witnesses were cautious in their identification, they expressed the belief that appellant was the person they had seen and it was for the trial judge to say what weight such evidence was entitled to (*People* v. *White,* 44 Cal.App.2d 183, 185 [112 P.2d 60]).

■ Much of what we have herein said is applicable to the proof offered by appellant to establish an alibi showing that he was not at or near the place where the attack occurred. He now urges that such proof was so satisfactory and convincing that the case of the prosecution cannot stand. Although appellant is satisfied with his proof, it is quite clear from the adjudication of the trial judge that the latter was not. It was the right of the duly constituted arbiter of the facts to determine what proof was to his mind most satisfactory and having done so, we are not at liberty to disturb his determination.

It would unduly prolong this opinion to again set forth the evidence before the trial court. Suffice it to say that from a consideration thereof, we cannot say, as a matter of law,

that there was no substantial evidence to support the conviction.

The attempted appeal from the sentence is dismissed. The judgment is affirmed.

DRAPEAU, J.—I concur. After a careful review of the record I find myself forced to concur in Mr. Presiding Justice White's opinion affirming the judgment in this case. This court, as pointed out by Justice White, is bound by the substantial evidence rule. Tried by that rule the evidence is sufficient to sustain the judgment.

But the case leaves me with the uncomfortable feeling that an innocent man may have been convicted. It seems to me that if the trial court had had the benefit of observing every witness in the case and listening to his testimony, instead of reading part of it from the transcript of the preliminary examination, society would feel better about the conviction too. But so far as its legal aspects are concerned that phase of the case has been definitely set at rest in *People* v. *Wallin*, 32 Cal.2d 803 [197 P.2d 734].

DORAN, J.—I dissent. In my opinion the doctrine of reasonable doubt is particularly applicable and in the light of that doctrine the evidence is insufficient, as a matter of law, to support the judgment.