[Crim. No. 3869. In Bank.—October 23, 1935.]

THE PEOPLE, Respondent, v. WAYNE TAYLOR, Appellant.

Wayne Taylor, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

CONREY, J.—Appeal by defendant from judgment of conviction entered upon verdict finding him guilty of burglary in the second degree, with admission of prior conviction of two felonies.

The evidence shows that during the night of March 1, 1934, the premises of an automobile dealer at 940 East Compton Boulevard, Los Angeles, were burglarized. The place was entered forcibly. The safe was opened with an acetylene torch and the contents thereof were torn out and strewn about the room. There was taken from a cash drawer $12.20 and from the safe a "pink slip" evidencing title of one Padget to a certain automobile.

A short time prior to date of the crime appellant, a young man of twenty-five years, arrived in California from the east, practically without funds. He occupied an apartment with one Knott, located on Van Ness Street, Los Angeles. Appellant's two brothers, LaVerne and Aubrey Taylor, who also came from the east, and one Pope, occupied an apartment several blocks distant on North Gower Street. About two weeks after the burglary the "pink slip" taken from the safe was found by the police in the apartment of appellant's brothers and Pope, in a box containing the personal effects of the brother, LaVerne.

After the burglary there was found on the floor near the safe, an invoice, previously contained therein, on which invoice appeared the imprint of the rubber heel of a man's shoe. This invoice was introduced in evidence by the prosecution;

also a pair of shoes which police officers testified they found in the apartment occupied by appellant and Knott. Two police officers stated that, in the presence of other officers, appellant had identified the shoes as his and, when asked if anyone else wore his shoes, answered in the negative.

The prosecution also introduced in evidence a photograph of the imprint on said invoice and a photograph of the imprint made by one of the rubber heels from said pair of shoes. An expert criminologist then took the stand to testify to the result of his study and comparison of the imprint made by the heel with the imprint on the invoice. He testified that in studying the case he had enlarged the photograph of the imprint on the invoice and made other additional photographs and prints and also created a composite picture from portions of the prints placed in juxtaposition. Without detailing the course of his reasoning, as brought out by his thorough examination, it is sufficient to say that he pointed to correspondence between the objects before him and announced his opinion that the imprint on the invoice was made by said rubber heel from the shoes found in appellant's apartment. All of this was admitted without objection. Therefore we are concerned, not with its admissibility, but only with its effect.

█ In those states where the subject has been considered, the trend of authority seems to be to the effect that by reason of the great practical differences between fingerprints and shoeprints, in that the shoeprints are so large and the points of similarity so obvious, the comparison of shoeprints is a matter of nonexpert rather than of expert testimony. And where it was held that expert testimony may be given, concerning measurements of footprints and shoes, and their correspondence with each other, it has been held that the witness may not express the direct opinion that the shoe made the tracks (11 R. C. L., p. 628). The implication is that the expert's opinion, when given, even if uncontradicted, is not conclusive of the fact, but the jury may consider the opinion evidence together with its own inspection of the physical evidence. And this is, we think, the correct rule. The court's instruction to the jury in this case (clerk's tr., p. 28) was in harmony with this rule.

█ Other than the evidence concerning the correspondence between the imprint of the heel of one of the shoes found in appellant's apartment and the imprint found on the invoice

discovered on the floor at the place of the burglary, and the evidence that the shoe was his property, there is no evidence connecting appellant with said burglary. There is no direct evidence that he was in the vicinity of the burglarized premises on the night in question. Appellant, as a witness in his own behalf, attempted to demonstrate that he could not get the shoe on his foot and could not wear it. The record does not clearly show the result of that experiment. At any rate, the experiment was made in the presence of the jury, which apparently must have found that the shoe could be worn by appellant. We can find no ground for holding that the evidence was legally insufficient to sustain the verdict. The most that can be said in favor of appellant's contention in this respect is that the evidence is far from conclusive and that for this reason appellant is the more likely to have been prejudiced by such errors as may have been committed in the course of the trial. But we are not able to discover any errors of sufficient importance to change the result.

 It is contended that the court erred in sustaining objections to questions propounded to appellant's witness Butler in connection with appellant's effort to demonstrate to the jury that he could not wear the shoe found in his apartment which, according to the evidence, made the imprint on the invoice. This witness was a shoe merchant of long experience, apparently qualified to answer such questions. The shoe having been produced and examined by said witness, he was asked to put it on appellant's foot. Objection to this procedure was sustained. After some colloquy between court and counsel the witness was asked to step aside and appellant was sworn as a witness. Appellant was asked to try to put on the shoe (People's Ex. 8). The following then occurred:

"Mr. Sheffield (appellant's counsel): . . . Sit down here Mr. Taylor. Try and get it on. Can you get it on at all? Mr. Butler, will you please take a look at that shoe? Mr. Sheffield: May I recall Mr. Butler now? The Court: What for? Mr. Sheffield: To have him pass an opinion on this. The Court: No, we don't want his opinion. The witness is there trying the shoe on, and that ought to be enough. Q. By Mr. Sheffield: Can you get it on? A. No, sir. Mr. Sheffield: Does the jury want to come down here and look closer? Has anybody got a shoe horn in Court? The Court: Oh, it is a

shoe horn you want? Q. By Mr. Sheffield: Can you walk at all with that shoe on? A. Can't get it in.''

It is obvious that the assistance of an expert was not needed to advise the jury that appellant could, or that he could not, wear the shoe.

It appears that the case was fairly tried, and that there are no sufficient grounds for reversal.

Judgment affirmed.

Seawell, J., Thompson, J., Shenk, J., Curtis, J., and Waste, C. J., concurred.