[Crim. No. 716.   Fourth Dist.   Apr. 19, 1949.]

THE PEOPLE, Respondent, v. JACK GORDON LEWIS et al:, Appellants.

Thomas Whelan for Appellants.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendants and appellants Jack Gordon Lewis and Sidney Earle Almgren, and defendant Wesley Bernard Ambrose were jointly charged with violating section 337a, subdivision 2 of the Penal Code in that they occupied a room with paraphernalia for the purpose of recording bets upon the result of horse races. Ambrose pleaded guilty. The other defendants were convicted by a jury and the trial court suspended imposition of sentence for one year and imposed a fine of $200 each as a condition of probation.

The building described in the evidence consisted of a building mart in the nature of a small business center. Behind this building was a mill room and two store rooms which extended along the north side and across the width of the entire building. The floor of the mill room was of concrete and on a higher plane than the level of the main floor. Leading from the floor of the mill room down four or five steps, approach is made to a toilet marked "Women." Adjoining the toilet room was another room which could be entered only by passing through the toilet room. This room

was in the nature of a secret chamber and was closed off from the toilet by the insertion of two panels which, when in position, gave the appearance of a blank wall and was evidently constructed for the purpose of carrying on race-horse betting by phone. Off of this same secret room was located another toilet with no outside entrance.

On February 19, 1948, Deputy Sheriff Ashley and other fellow officers (being informed of the nature of the room and of the alleged illegal operation) went up the alley in back of the building and through the mill works room, where several employees were working, including a young man described as a "hunchback," who was working near the head of the stairway. Apparently the officers were scouting around for about 15 minutes endeavoring to find an entrance to the secret room. They later discovered the "hunchback" coming up the stairway out of the "Women's" toilet. They also saw one or two other persons on this same stairway at different times. Ashley testified that just as he started down this short stairway the three defendants "were filing out, single file," through the toilet marked "Women"; that one of the defendants was near the first step, one in the toilet room and the last one was coming through the secret panel doorway, which was then opened. Officer Earnest brushed by the defendants, went into the secret room, and saw flames bursting forth from the toilet bowl in that room. Scorched papers were rescued and other papers and paraphernalia which were later identified by an expert as typical of paraphernalia used by bookmakers in that community, were found and admitted in evidence. The room was filled with smoke. Three card tables were lined up against the wall with telephones on each table. The wires thereto had been cut and parts of the phone had been hidden in the toilet. Ashley brought all three of the defendants into the room and ordered defendant Lewis to hook up the wires. They were replaced by him and the missing parts were produced and service was resumed. In a short time the phone began to ring on numerous occasions and the deputies answered the phones. Several alleged patrons unknowingly attempted to place bets with the officers. In fact the lines became so busy the officers asked the defendants if they didn't want to answer the calls. "They just laughed." These phones were installed on November 11, 1947, and were listed under the name "Rebman Grain & Produce Service." On February 19, 1949, service was disconnected for the reason: "Questionable business."

Appellants failed to testify at the trial. On their appeal counsel for them frankly admits that the room was occupied by defendant Ambrose for the purposes charged in the complaint. His main contention is that there was no evidence showing that either of these two appellants had ever occupied or been in the room in question where the paraphernalia was located prior to the time they were "Herded" in there by the officers on the day of the arrest; that since there were other men in and about the premises and not occupying that room, it was just as logical to believe that these two appellants were likewise not occupying it for the purposes alleged, citing such cases as *People* v. *Simon,* 66 Cal.App.2d 860 [153 P.2d 420] ; *People* v. *Greco,* 47 Cal.App.2d 628 [118 P.2d 886].

The circumstances related might well have led the jury to believe that the presence of these two appellants was essential to assist the other defendant in carrying on such a flourishing business that three separate phones had to be operated at the same time at three different tables. Appellant Lewis showed considerable familiarity with the premises as well as the means by which telephone service could be reinstated. The great volume of paraphernalia used, including adding machines, pencils, pads, and other recording devices, were circumstances to be considered. It is not necessary for the prosecution to prove by *direct evidence* that defendants occupied the room for the purpose of recording bets on horse races. The purpose for which the room was used may be shown by surrounding *circumstances,* and if the jury could reasonably conclude from the circumstances established that defendants were guilty, such verdict cannot be disturbed on appeal. These rules are so well established that citation of authority would be superfluous. The circumstances outlined above are sufficient to give support to the verdict as rendered. (*People* v. *Radley,* 68 Cal.App.2d 607 [157 P.2d 426] ; *People* v. *Ravenscroft,* 90 Cal.App.2d 543 [203 P.2d 109].)

Over objections, the officers were permitted to relate the contents of the calls while they were answering the phones in the secret room on the occasion of the arrest. Appellants contend that the court erred in receiving evidence of the conversation on the telephone between the arresting officers and those who called with reference to their bets. It is the established rule that the court may properly receive evidence of such conversations not for the purpose of establishing the

truth of what was said over the telephone, but for the purpose of establishing that the room was being occupied for placing bets on horse races, and the jury was so instructed. (*People v. Joffe,* 45 Cal.App.2d 233, 235 [113 P.2d 901]; *People v. Reifenstuhl,* 37 Cal.App.2d 402, 405 [99 P.2d 564]; *People v. Radley, supra.*)

■ The principal objection concerned some of the calls wherein the alleged better first asked if ''Sid'' or ''Barney'' was there. Counsel claims that this may have led the jury to believe from hearsay evidence that the caller referred to appellant Sidney Earle Almgren or one of the other defendants and that therefore that evidence was inadmissible for that purpose. No motion was made to strike any portion of the conversation complained about. The court instructed the jury that such conversation was admissible only for the purpose heretofore mentioned. Under such circumstances appellants cannot claim prejudicial error. (*People v. Ines,* 90 Cal.App.2d 495 [203 P.2d 540].)

■ The trial court refused, as being covered, defendants' instruction that under subdivision 2, section 337a of the Penal Code the word ''keep'' or ''keeping'' means ''to have the care of or to conduct or carry on or to manage or to maintain as an establishment, institution or the like,'' and the word '' 'occupy' . . . means to keep the possession of or to hold or keep for use . . . and denotes an exercise of dominion over the premises in question,'' citing *People v. Yoder,* 35 Cal.App.2d 347 [95 P.2d 470]; *People v. O'Brien,* 37 Cal. App.2d 708 [100 P.2d 367]; and CALJIC No. 723.

The trial court gave a similar instruction in practically the same language as the proffered one. In addition, the section and subdivision of the Penal Code under which defendants were prosecuted was read at length and the jury was told that there must be some causal connection established which would reasonably justify an inference that the defendants occupied and kept a place where such devices were utilized for the purpose of registering bets. No error appears in this respect. Other proffered instructions on this subject were properly refused.

■ Finally, defendants registered some complaint about the admissibility of the testimony of the expert, who duly qualified as such, in relating his opinion that the papers, books and paraphernalia found *constituted bookmaking paraphernalia.* In this connection it is argued that an opinion on that fact was an invasion of the province of the jury and

was the ultimate question to be decided by it and therefore was not a subject for expert testimony, citing *People* v. *Taylor,* 4 Cal. 2d 495, 497 [50 P.2d 796]. We see no merit to this contention. (*People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693] ; *People* v. *Miller,* 67 Cal.App.2d 382, 385 [154 P.2d 435] ; *People* v. *Tucker,* 88 Cal.App.2d 333, 339 [198 P.2d 941].)

The evidence, including the testimony of the expert, leaves but little doubt, if any, that the room was being occupied by someone for such purpose. Appellants concede that the room was being occupied by defendant Ambrose for that purpose. The only question was appellants' connection therewith. Upon sufficient evidence the jury determined that issue against them.

There has been no final judgment of conviction within the meaning of section 1237 of the Penal Code from which an appeal may be taken. The attempted appeal from the judgment is dismissed. (*People* v. *Ormes,* 88 Cal.App.2d 353 [198 P.2d 690].) Order denying new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.