[Crim. No. 700.    Fourth Dist.    Apr. 13, 1951.]

THE PEOPLE, Respondent, v. CHARLES MERCER, Appellant.

Richard J. Weller for Appellant.

Edmund G. Brown, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was convicted by a jury of the crime of burglary with explosives. He appealed from the judgment of conviction and from the order denying his motion for a new trial. Two points are urged on appeal: (1) That the evidence is insufficient to sustain the verdict; and (2) That the court erred in admitting in evidence a certified copy of a weather report.

On January 21, 1950, at about 9 o'clock a. m., one of the owners of Stembridge Bros. Market, near Colton in San Bernardino County, discovered that his place of business had been entered through a hole cut in the roof and that a rear door was open. The market had been closed about 7 p. m. on January 20th, at which time two safes in the office in the rear of the store had been locked and tested and the burglar alarm set.

Officers called to investigate the burglary found that a 1⅜-inch hole had been bored in the office door and the burglar alarm wires near the hole had been cut. An empty wooden rack with three shelves was found near the rear of the store. The rack, approximately 39 inches high, had been constructed out of new lumber on the afternoon of January 20th and left outside the market near a motor room attached to the building. A "tennis shoe" footprint was found on the lower shelf of this rack and partial footprints on the other two. There was also a similar footprint in the sand about 20 feet south of the rack. About 6 feet north of the wall

of the motor room, the tar paper on the roof of the market had been torn away, holes bored in two of the boards on the roof and the boards pulled off, leaving a hole approximately 20 inches in diameter in the roof. This hole opened into the surplus stock area of the market. Near the hole was a keyhole saw blade and a rope leading down into the market through the hole was fastened to a vent pipe on the roof. One of the boards had been pulled from the roof and was found about 2 feet from the hole and a short distance from it was a drain trough in which there was considerable sand. In this sand were footprints which appeared to be of the same pattern as the prints on the rack of shelves and on the ground at the rear of the market. One of the safes in the office had been broken open and a chisel and two punches were still imbedded in it. An attempt had been made to break the concrete in which the other safe was encased. Loose dynamite was removed from a hole in the concrete and a burned dynamite fuse was found on the floor near it.

On April 15th defendant's car was searched and in it the officers found a pair of tennis shoes, a hacksaw, 15 punches, a set of steel drills, 6 cold chisels, an electric drill and a 1⅜-inch wood bit.

Defendant, on April 16th, upon being questioned by the officers, stated that he owned the tennis shoes and all of the tools which were found in his car on that occasion and that the tools and shoes had been in the car for about a year. On May 12th, upon being again questioned, he stated that he purchased the car on January 10, 1950, and had returned that week end to Los Angeles to have a window replaced; that he then returned to San Bernardino on the week end of January 20th and took his family "on a drive" to Palm Springs. A few days later he stated that the tennis shoes found in the car were his and that they had been in his possession for approximately a year.

Ray H. Pinker, technical director of the scientific crime investigation laboratory of the Los Angeles Police Department, made extensive examinations and comparisons between appellant's tennis shoes (found in the car) and the footprints found at the scene of the burglary and between holes which he bored with the 1⅜-inch wood bit (also found in the car) and the drill holes found in the board on the roof of the market. He also examined the dynamite removed from the hole in the concrete in which one of the safes was encased and the burned fuse. He made microscopic examinations

chemical analyses, exemplars, photographs and photomicrographs and determined as the result of his examinations and comparisons that the left sole of Mercer's tennis shoes made the footprint in the rear of the market; that the right sole of appellant's tennis shoes made the footprint on the shelf of the wooden rack found in the rear of the market; that appellant's 1⅜-inch wood bit had been used on the board torn from the roof, and the door; and that the dynamite found in the concrete around the floor safe was Trojan dynamite.

Mrs. Mammie F. Smith, a Trojan powder distributor, whose place of business was near San Bernardino, testified that around September, 1949, she sold the defendant some Trojan dynamite powder and everything that went with it for explosion purposes.

Defendant testified in his own behalf and denied entering the Stembridge Market on January 20th or 21st and denied that he had ever purchased dynamite from Mrs. Smith. He stated that he left San Bernardino on January 16th and arrived in Los Angeles that evening and remained there until January 22d. Several witnesses were produced in his behalf, who testified, in effect, that the defendant was in Los Angeles on January 20th and 21st and that he and his wife played canasta with them from 7 o'clock p. m., January 20th, until 4 o'clock the following morning and that the defendant was still in Los Angeles between 8 and 9 o'clock of the morning of January 21st. These witnesses were appellant's relatives, with the exception of one, who was a good friend.

The evidence was sufficient to justify the verdict of the jury. While the evidence was circumstantial, it is well settled that the commission of a crime may be adequately established by such evidence. (*People* v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1]; *People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821].) The sufficiency of the incriminating circumstances is a question exclusively within the province of the jury. (*People* v. *Sanchez,* 35 Cal.App.2d 231, 235 [95 P.2d 169]; *People* v. *Willison,* 116 Cal.App. 157, 159 [2 P.2d 543].)

In *People* v. *Taylor,* 4 Cal.2d 495, 497-498 [50 P.2d 796], the only evidence connecting the defendant with the burglary was testimony by an expert that in his opinion the imprint of a heel of a man's shoe found on an invoice near the burglarized safe was made by a rubber heel from shoes found in the defendant's apartment. It was held that the evidence was sufficient to sustain the verdict of guilty. And in *People*

v. *Lyle,* 91 Cal.App.2d 45, 46-47 [204 P.2d 356], evidence quite similar to that in the instant case was held to be sufficient to support a conviction of second degree burglary.

The defendant argues that the evidence, while it admittedly shows the commission of·a burglary, does not connect him with the commission of the crime, and in this connection attacks the testimony of Mr. Pinker. The claimed inconsistencies in the testimony of Mr. Pinker were matters which should have been directed to the attention of the trier of fact and cannot be urged on appeal. (*People* v. *Munoz,* 97 Cal. App.2d 432, 435 [218 P.2d 122]; *People* v. *Alexander,* 92 Cal. App.2d 230, 234 [206 P.2d 657].)

From an examination of the record before us it is apparent that there is ample proof that the footprints made at the scene of the crime were made by the tennis shoes admittedly owned by the defendant; that the holes bored in the roof of the market and in the office door were bored by the same $1\frac{3}{8}$-inch bit found in the defendant's car; that the defendant, a few months prior to the commission of the crime, purchased and had in his possession the same kind of dynamite as that found near the safe in the market; that the wood bit and tennis shoes were contaminated with tar such as was found in the tar paper covering the roof of the market. It was also shown that the defendant was familiar with the burglarized premises, a circumstance which may be considered by the jury. (*People* v. *Bennett,* 93 Cal.App.2d 549, 552 [209 P.2d 417].) It was also shown that the defendant was familiar with explosives, having admitted that he learned their use while in the service.

The burden was on the defendant to prove his alibi and whether he did, was a matter solely for the determination of the jury. (*People* v. *Alexander,* 92 Cal.App.2d 230, 234 [206 P.2d 657].) The jury was justified in rejecting the alibi evidence. The defendant testified that he purchased his automobile in Los Angeles on January 17th and it was shown that the insurance policy on the car was written as of January 10th and the contract as of January 15th. He testified that he left San Bernardino on January 16th and that before he departed that day, he paid the light and gas bills and withdrew approximately $25 from his savings account in the American National Bank in San Bernardino. It was shown by the records of the bank that no withdrawals had been made from defendant's savings account at any time dur-

ing the month of January, 1950, and it was also shown that the payment on defendant's gas bill was made on January 12th.

Defendant stated to the officers when he was questioned on May 12th that he, with his wife and family, had driven to Palm Springs on the week end of January 20th, a statement which is entirely inconsistent with his testimony at the trial to the effect that he was in Los Angeles during that time.

■ Defendant contends that the court erred in admitting in evidence a certified copy of a weather report. This document was admitted in rebuttal of testimony offered by the defendant to support his alibi. In this connection, a picture of defendant, his wife and children was introduced in evidence and testimony given that it was taken one sunny afternoon in Los Angeles during the week of January 17th to 22d. Defendant testified that when this picture was taken the Cornwells, who lived in the house next door, were building a wall around the front part of their house. However, Mr. Cornwell testified that the only wall he ever constructed around his house was started in September, 1949, and completed in November of that year, and that during the course of the construction, pictures were taken next door and at that time defendant, his wife and two children were present. The weather report was admitted to show that the only afternoon the sky was clear during the week January 17th to 22d was from noon to 2 o'clock p. m. on January 17th and that all the afternoons of that week were either hazy, smoky or foggy. Appellant's contention that the admission of this document constituted prejudicial error is entirely without merit. (*People* v. *Neal,* 97 Cal.App.2d 668, 673 [218 P.2d 556].)

■ The circumstances disclosed by the record reasonably justify the verdict of the jury and do not warrant interference with its determination. (*People* v. *Huizenga,* 34 Cal.2d 669, 675-676 [213 P.2d 710].) As was said in *People* v. *Gutierrez,* 35 Cal.2d 721, 727 [221 P.2d 22] :

"After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it."

Judgment and order affirmed.

Barnard, P. J., and Griffin, J., concurred.