[Crim. No. 2565.   Third Dist.   Feb. 7, 1956.]

THE PEOPLE, Respondent, v. WILLIAM HENRY CROSBY, Appellant.

William Henry Crosby, in pro. per., and Max H. Hoseit, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and F. G. Girard, Deputy Attorneys General, for Respondent.

McMURRAY, J. pro tem.*—Appellant was convicted of two counts of burglary in the second degree after trial by jury. He has filed in this matter two briefs, one in propria persona and the other through a court-appointed attorney.

Purdy's Creamery, Kuhlman's Prescription Pharmacy, John Piches' office, and other businesses are located in the same building on the corner of Taylor and Vernon Streets in Roseville, California. At about 5:30 p. m. on November 26, 1953, Joseph T. Moore, owner and operator of the Purdy Creamery, locked the safe and left the creamery office. At about 4:15

---

*Assigned by Chairman of Judicial Council.

a. m. the following morning, Mr. Moore was awakened by one of his employees who asked what had happened to the office. Immediate investigation by Mr. Moore, and at about 4:30 a. m. by Roseville police officers, and later in the day by a representative of the Bureau of Criminal Identification and Investigation, disclosed that the office had been ransacked and the safe damaged. The safe had been severely dented; the dial and handle thereon had been knocked off. When the safe was opened by an acetylene torch seven punches were found between the inner and outer walls of the safe. Entrance into the building had been gained through a broken pane of glass in the skylight. Entry into the creamery proper had been gained by breaking through a wallboard partition common to another room of the building from which entry was had into the creamery office. Under the skylight on a dusty board in the floor a shoeprint was found. A section of wood containing this shoeprint was sawed out and was subsequently introduced into evidence in the trial in the matter. On the floor near the safe were chips of paint which also were subsequently introduced into evidence.

On the night of December 3, 1953, an association of insurance agents was meeting in John Piches' office when the agents heard glass break in the rear of the building. Two of the agents at the meeting immediately investigated by going down the hallway to the rear of the building. The storeroom of Kuhlman's Pharmacy has an entrance into this common hallway. One of the agents asked, "Who is there?" From the storage area of the pharmacy a man pointed a flashlight through the top of the broken glass door and said, "This is a burglary. Don't move or I'll shoot." The agent returned to his office and with the other agents went outside. One of the agents telephoned the police and remained in the lighted office until he saw a man with a flashlight come through the hallway to a distance of 5 to 10 feet from him. This man then left the building. Shortly thereafter Mr. Piches saw a man running down the street outside and said, "Hello"; the man replied, "Don't move or I'll shoot" and continued running. After a short chase, Mr. Piches tackled this man and threw him to the ground. At that time the man was wearing a yellow jacket. The agent who saw the man in the hallway of the building testified that the man on the ground was the same man he had seen and was the appellant in this matter. Mrs. Piches, the wife of the man who had tackled the man wearing the yellow jacket, said

she saw the man with a yellow jacket go out of Piches' door and that he was the same man who was subsequently tackled by her husband. Roseville police officers Zien and Caldwell arrived on the scene and found on the appellant's person a 10-pound sledge, a flashlight, pliers, several chisels and a center punch. The appellant was wearing a pair of women's crepe soled red tennis shoes from which a piece of glass was later removed. The entry to Kuhlman's Pharmacy storeroom on December 3, 1953, had been made by breaking glass in the same skylight which had formerly been broken into to gain entrance to this same building on November 26, 1953. Joseph Jacobs, the owner of Auburn Auto Wrecking, testified that prior to the Purdy Creamery burglary, appellant had been on his premises where his tools were kept; he testified further that the sledge hammer found on appellant's person was similar to, and had a burned handle exactly like one which had been on his premises, and was then missing. From among the punches found in the Purdy safe, Jacobs identified two punches as coming from his wrecking firm. These were a large square silver punch which had a chip out of the point and a center punch with the head ground on it, which he recognized as his own work. Both of these punches were introduced in evidence.

An expert criminologist testified that the sledge hammer taken from appellant upon his apprehension had made the impression marks on the creamery safe handle. His opinion was based on his finding two details on the marking on the safe handle which exactly matched markings on the sledge hammer. He testified that in his opinion paint on the head and striking edge of the sledge hammer had identical arrangement and microscopic appearance with paint chips knocked from the creamery safe. He further testified that in his opinion the print of the shoe on the dusty board, which was found after the entry into Purdy's Creamery, was made by one of the crepe soled shoes worn by appellant when apprehended and also testified that in his opinion the glass removed from appellant's shoe matched the glass from the broken pane in the door, found on the floor of the corridor between Piches' office and Kuhlman's Pharmacy storeroom, which was broken during the pharmacy burglary. This testimony was based on the facts that both samples of glass fell into the same range of thickness and that the density and refractive index of both were identical. ■ A deputy sheriff of Placer County testified that appellant admitted that about November 10th he had climbed over the Auburn

Auto Wrecking yard fence at night and had taken the sledge hammer and that appellant had further admitted that he had stolen punches from the same wrecking yard. The deputy further testified that appellant had told him that he had "cased" the building in which Purdy's Creamery and Kuhlman's Pharmacy were located.

Appellant did not take the stand in his own defense. Appellant's counsel set up the defense of alibi to the creamery burglary and adduced testimony from appellant's landlords, who both testified to the effect that through the night of November 26, 1953, they heard appellant limping back and forth until 2 a. m. and 11:30 p. m. in his apartment which was immediately above theirs. The woman with whom appellant was living at the time testified that appellant had been suffering from an injured knee and was in their apartment throughout the entire night of November 26, 1953.

In the opening brief filed by appellant on this appeal he complains that:

1. There was no valid identification of any exhibits introduced by the prosecution, nor any linking of the defendant with those exhibits.

2. That a communication by one of the jurors to a prosecution witness during the course of the trial was illegal and reversible error.

3. That the exhibits were tampered with by the prosecution, thereby operating to render such exhibits invalid.

4. That the state failed to establish a corpus delicti.

5. That no proper foundation was laid for the admission of certain exhibits.

6. That intent was not proved.

7. That his counsel at the trial (selected by him) was so incompetent as to require a reversal by this court.

8. That defendant "was never connected with Count One, which is shown by testimony, and his then physical condition. Moreover, the district attorney maliciously perpetrated Count Two against defendant merely because he could not find the real burglar, if, a real burglar actually existed."

9. That defendant was never identified at any time whatsoever.

10. "The district attorney was guilty of prejudicial misconduct, malevolence, embracery, and subornation of perjury."

11. That the court did not instruct the jury properly.

Appellant's counsel in the document titled "Appellant's

First Amended Opening Brief" urges a reversal as to Count One in that the evidence is insufficient to support the verdict.

A reading of the contentions set forth in these briefs will give some indication of the nature of the grounds for reversal here urged. Appellant's contention that there was no valid identification of any exhibits introduced by the prosecution nor any linking of the defendant with the same is without merit. ■ Absolute identification of articles admitted into evidence is not necessary. It is sufficient if they are recognized as similar. The question of the weight and the credibility is a matter for the jury. (*People* v. *Cullen,* 37 Cal.2d 614 [234 P.2d 1]; *People* v. *White,* 44 Cal.App.2d 183, at 185 [112 P.2d 60]; *People* v. *Thompson,* 69 Cal.App.2d 80, at 87, 88 [158 P.2d 213].) The testimony as to the exhibits and their handling by the officers, although not of such high order as to be a criterion for such testimony, is thoroughly adequate to show the chain of possession of these exhibits and, furthermore, their connection with the defendant. Appellant's complaint that a communication by a juror to one of the People's witnesses was reversible error is not, in view of the record, well founded. During the trial, appellant's counsel, who he now complains was completely incompetent and not zealous in his defense of appellant, directed the court's attention to the fact that one of the jurors had talked with one of the policemen who was a witness in the case during the course of the trial. The court, quite properly, called the juror before it and examined her as to the substance of the conversation. The juror denied any impropriety and stated that she in no way discussed the case with the policeman, but asked him to get her a cup "because I didn't want to drink my water upside down." Appellant's counsel at that time stated that he was "satisfied if she didn't talk to anybody." ■ Then the juror stated, "I assure you I didn't. Sam [the officer] and I are very well acquainted. I asked him if he wouldn't get me a cup to drink out of. I had an aspirin. I wanted to take an aspirin." Certainly this is not the sort of conversation between a juror and a prosecution witness which is a ground for reversal. ■ Unless a conversation between a juror and a prosecution witness is related to the subject of the trial, it is not such ground. (*People* v. *Magee,* 60 Cal.App. 459, at 463 [213 P. 513]; *People* v. *Henry,* 132 Cal.App. 557 [23 P.2d 77]; *People* v. *Murphy,* 92 Cal.App. 729 [268 P. 927].)

■ Appellant's complaint that exhibits were knowingly tampered with arose because certain identifying slips were

removed from some exhibits during the course of the trial. It was a matter of no consequence and in no way affected the validity of the proceedings. ■■ Appellant's contention that the state did not establish a corpus delicti is without any merit. Certainly as to the second count hereof, that is, the evening when defendant was tackled while leaving a building which showed evidence of having been entered through the skylight and a statement by appellant that he was committing a burglary, there can be little doubt that the elements of burglary were established; so far as the pharmacy burglary was concerned, it is difficult to imagine a set of circumstances which is more conclusive. The creamery burglary would appear to have a sufficient corpus delicti established by the testimony of the owner of the creamery that the establishment was ransacked and the safe battered and that there had been an entry into the creamery through a skylight and a wallboard partition. (*People* v. *Martin,* 128 Cal.App.2d 361, 364 [275 P.2d 635].) ■ Evidence of appellant's guilt in this matter is furnished by his possession of the sledge hammer, which, according to expert testimony, was used to batter the safe, the further fact that his footprint was found on the board under the broken skylight after the creamery burglary and that this footprint was identified as having been made by one of the shoes he was wearing on the night he was apprehended in the pharmacy burglary seems to be convincing of his relation to the first crime. Indeed, in *People* v. *Taylor,* 4 Cal.2d 495 [50 P.2d 796], a conviction of burglary was upheld where the only evidence connecting the defendant with the crime was a heel imprint found on an invoice near a burglarized safe, which imprint matched the heel of one of the defendant's shoes later found in his apartment. Furthermore, there was the testimony that two of the punches found in the wall of the door of the Purdy safe and the sledge hammer found on appellant had come from a local auto wrecking firm, to which appellant had had access, and there was the evidence that appellant admitted to a deputy sheriff that he stole the sledge hammer and the punches from this firm, and also that he had cased the building before entering. ■ The contention that intent must be proven like any other fact is true, but it overlooks the fact that intention may also be inferred from other evidence. In *People* v. *Stewart,* 113 Cal.App.2d 687, 691 [248 P.2d 768], it is said "the burglarious intent could be reasonably and justifiably inferred from the unlawful and forcible entry alone."

The incompetence of the counsel selected by defendant for his defense in the trial court does not appear in the record. Contrariwise, the record discloses an experienced and able counsel who was zealously defending the rights of his client.

Appellant's contention that he was never connected with the offense charged in Count One has been heretofore disposed of.

The appellant's next contention that he was never identified at any time whatsoever is without any support in the record. The charge that the "district attorney was guilty of prejudicial misconduct, malevolence, embracery, and subornation of perjury" finds no support in the record. ■ It does, however, warrant the statement that when a claim of misconduct is not asserted at the trial it cannot be considered the first time on appeal. (*People* v. *Simpson,* 43 Cal.2d 553 [275 P.2d 31].) Moreover, the court gave instructions that the jury was to be governed solely by the evidence and not by counsel's statements.

The further claim by appellant that his constitutional rights were violated by the prosecuting attorney's comment on appellant's failure to explain or deny incriminating evidence against him is unfounded. (*People* v. *Sutic,* 41 Cal.2d 483 [261 P.2d 241].) It is said in *People* v. *Goodall,* 104 Cal.App.2d 242, at 249 [231 P.2d 119], that: "It is the duty of the defendants to show error, and that means defendants are under an affirmative duty in that respect. It is not proper to attempt to shift that burden upon the court or respondent." The general claim by appellant here that the court did not properly instruct the jury would well come within this rule; nevertheless, a reading of all of the instructions given, reveals that there was no unfairness or impropriety in the instruction of the jury. Appellant has also submitted an affidavit to the effect that the testimony of Jacobs, the owner of the wrecking yard, was false in certain respects. This affidavit cannot be considered at this time on this appeal. (*People* v. *Williams,* 128 Cal.App.2d 458, at 463 [275 P.2d 513].)

The judgments appealed from are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied February 20, 1956, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1956.