[Crim. No. 3456.   Fourth Dist., Div. Two.   Aug. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH MILLER ZISMER, Defendant and Appellant.

Michael R. Quinn, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Allen A. Haim, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—By information defendant was charged with burglary (Pen. Code, § 459) and a prior felony conviction. Defendant admitted the prior and, following a jury trial, was

found guilty of first degree burglary. His motion for a new trial and application for probation were denied and he was sentenced to state prison, sentence to run concurrently with any other sentence he may be obligated to serve. He appeals from the judgment of conviction.

Defendant was charged with having burglarized the residence of Mr. and Mrs. Holmes while they were away for the weekend. The Holmes left their house on Thursday. Their two sons visited the house briefly on Saturday afternoon and left to join their parents; before they left, they checked to see that the windows and doors were closed and locked. When the Holmes returned to the house around 10:30 p.m. that night, they noted that some of the screens had been "pushed" out from the windows. The window of the front bedroom had small scratch marks around it and had been pried loose and the screen and window of another bedroom were open. Nothing was missing from the house, but Harry Holmes, one of the sons, subsequently found a handkerchief on his bedpost and a flashlight and pliers in his closet. He had never seen the items before.

Earlier on Saturday evening at about 9:30 p.m., two neighborhood boys observed a man at the front door of the Holmes' residence. The man left when the lights of a car shined across the house. The boys walked up the street and went back to the Holmes' residence through a golf course on which the house fronted. They noticed that a sliding glass door was open, became suspicious and called Mr. Lockwood, a resident across the street. They all went back together to check the Holmes' house. The boys testified that they heard a screen being "punched out" but were unable to see anyone because of the bushes. Mr. Lockwood checked behind the house and encountered a man, whom he later identified as the defendant, near the screen door of an enclosed tropical garden. Lockwood testified that defendant said he lived in the town of Etiwanda and was visiting his brother-in-law who lived nearby. Lockwood detained defendant until the officers arrived.

Over defendant's objections, the prosecution was permitted to introduce into evidence a photograph of a partial heel print found on a bedstand located near the window in the front bedroom of the Holmes' residence and a photograph of a footprint found in the tropical garden where defendant was discovered. A pair of black Florsheim shoes defendant was wearing on the night of his arrest was also received in evidence.

A deputy sheriff found defendant's car parked several hundred yards away from the Holmes' residence on Gerrymander Street at its intersection with Sycamore Street. The address of the Holmes' house was 5763 Sycamore. The car was parked near a residence at 5818 Sycamore. The officer was permitted over objections, to testify that he checked the residence at 5818 Sycamore and noted that the screens on the house "looked like they had been tampered with." Also over objections, the prosecution was permitted to introduce into evidence a photograph of a footprint found underneath one of the windows of that residence.

Defendant testified in substance as follows: On the night in question, he was at one of his brothers-in-law's house until 9 p.m. and then went to visit another brother-in-law who resided in the general area of the Holmes' residence, but no one was home. He then drove back towards the country club, parked his car and walked onto the golf course to check the sprinkler systems because he worked for a nursery and got a commission for leads to their sales. After checking the sprinklers, he came out of the golf course and knocked on the front door of the Holmes' house to inquire whether new homes were being constructed in the area. No one answered so he went back into the golf course. As he came out he thought he saw someone in the Holmes' house so he knocked again but no one responded. He left and went to his car, and as he drove by the Holmes' residence he heard children shouting that someone was in the house. He parked his car, returned to the Holmes' house, looked into the windows and was certain he saw someone inside. Eventually he was surrounded by people in the tropical garden. He denied ever entering the house.

Defendant contends (1) that the court committed prejudicial error in admitting evidence of an attempted entry into the house at 5818 Sycamore and (2) that the evidence was insufficient to support the conviction.

I

Evidence of other crimes is not admissible solely to prove the criminal disposition or propensity of a defendant to commit the crime charged. (*People* v. *Sam*, 71 Cal.2d 194, 203 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Haston*, 69 Cal.2d 233, 243 [70 Cal.Rptr. 419, 444 P.2d 91].) However, such evidence is admissible to show guilty knowledge, motive, intent, or presence of a common design or plan. But even for such purposes the evidence must be viewed with "extreme

caution." (*People* v. *Sam, supra*, p. 203; *People* v. *Haston, supra*, p. 244.)

■ Although it is frequently stated that evidence of other offenses may be introduced to show "common scheme or design" or "modus operandi," the true rationale for the admissibility of other offenses for such purpose is that the common features of the crime charged and of the other offenses committed by defendant are so unique that it may be logically inferred that defendant was the one who committed the crime charged. (*People* v. *Sam, supra*, 71 Cal.2d 194, 204-205.) Thus, such evidence "has probative value only to the extent that *distinctive* 'common marks' give logical force to the inference of identity . . ." (*People* v. *Haston, supra*, p. 246.)

In the instant case, over defendant's objection, the court admitted evidence offered by the prosecution to show that defendant may have tampered with the screens at 5818 Sycamore because "this evidence might show a common planned scheme or design." At oral argument, the Attorney General conceded that there was no other legal basis for the admissibility of the evidence.[1] We must, therefore, determine whether the marks common to the crime charged and the "other offense" were so distinctive as to meet the test of admissibility required by *People* v. *Sam, supra*, 71 Cal.2d 194, 203 and *People* v. *Haston, supra*, 69 Cal.2d 233.) The test is whether the marks common to the offenses are so distinctive that they set the charged and uncharged offenses apart from other crimes of the same general variety. (*People* v. *Haston, supra*, 69 Cal.2d 233, 246.) ■ In the instant case the common marks, possible tampered screens and footprints under the windows, do not set the offenses apart from any other burglary of the same general variety; there was no evidence that the footprints under the window at 5818 Sycamore were made by the same shoe that made the footprint found at the Holmes' residence.[2] To term the evidnce "circumstantial evidence" does not determine its admissibility. To be admis-

---

[1] This is not a case where the "other offense" was so interwoven with the crime charged that proof of the latter necessarily required proof of the other offense. (See *People* v. *Carmen*, 43 Cal.2d 342, 345 [273 P.2d 521]; *People* v. *Jackson*, 36 Cal.2d 281, 285-286 [223 P.2d 236]; *People* v. *Dabb*, 32 Cal.2d 491, 500 [197 P.2d 1]; Witkin, Evidence (2d ed. 1966) p. 308; 18 Cal.Jur.2d (Rev.) Evidence, § 209.

[2] Even a cursory examination of the photographs of the footprint allegedly found under the window at 5818 Sycamore discloses dissimilarities between it and the heel of defendant's shoes.

sible, evidence, whether "circumstantial" or direct, must be relevant. In the absence of a showing that defendant was the one who "tampered" with the screen at 5818, the evidence was not relevant. Thus the evidence should have been excluded.

## II

Defendant contends that the evidence was insufficient to support his conviction on the ground that there was no evidence that the footprints found at the scene matched the shoes he was wearing on the night in question. The photographs of the footprints were received in evidence over defendant's objection that no such showing had been made. The only foundational evidence introduced by the prosecutor was that the photographs were taken at the scene on Saturday night during the investigation.

The Attorney General argues that "a correspondence of shoe prints found in the Holmes bedroon [sic] and below the window at the residence of 5818 Sycamore [not the Holmes' residence], with the shoes of appellant was admissible to identify appellant as the person who made the unlawful entry." However, there was no expert or other testimony to show that the prints "corresponded" with defendant's shoes. The Attorney General contends, nevertheless, that "in view of the character of a shoe print and its large size, the jury was able to conclude without expert testimony that the prints and shoes were the same."

Although the issue whether the footprints matched defendant's shoes was a factual question to be resolved by the jury, it does not follow that the photographs of the footprints were admissible without some foundational evidence which would permit an inference that they corresponded to defendant's shoes.

██ Evidence of footprints is admissible where they bear such similarity to those of the shoes worn by a defendant as to justify an inference that the tracks were made by his shoes. (*People* v. *Taylor*, 4 Cal.2d 495 [50 P.2d 796]; Witkin, Cal. Evidence (2d ed. 1966) 329; 2 Wigmore, Evidence (3d ed.) § 415, p. 394.) However, as Wigmore states, in contrast to that from fingerprints, the "Identity-inference" from comparison of footprints "is apt to be especially weak." "This," he says, "is because the features usually taken as the basis of inference—size, depth, contour, etc.—may not be distinctive and fixed in type for every individual, but may apply, even in

combination, to many individuals. Hence their probative significance is apt to be small.'' (Wigmore, *supra*.)

With possibly one exception,[3] in all of the California cases we have found involving identification by shoeprints, expert testimony was introduced showing the similarities between the prints and defendant's shoes. (E.g., *People* v. *Taylor, supra,* 4 Cal.2d 495; *People* v. *Rowell,* 133 Cal. 39 [65 P. 127]; *People* v. *Searcey,* 121 Cal. 1 [53 P. 359, 41 L.R.A. 157]; *People* v. *McCurdy,* 68 Cal. 576 [10 P. 207]; *People* v. *Corral,* 224 Cal.App.2d 300, 306 [36 Cal.Rptr. 591]; *People* v. *Crosby,* 139 Cal.App.2d 101 [292 P.2d 922]; *People* v. *Mercer,* 103 Cal.App.2d 462, 466 [229 P.2d 411]; *People* v. *Houser,* 85 Cal.App.2d 686 [193 P.2d 937].) While those cases do not pass directly on the question whether expert testimony is required, in *People* v. *Corral, supra,* at p. 306, the court inferred such a requirement when it is said, ''Partial fingerprints and footprints are sufficient, and it is immaterial whether or not there was a complete print. The sole question is whether that print found is sufficient to enable the expert to identify the criminal.''

The Attorney General refers to the court's observation in *People* v. *Taylor,* 4 Cal.2d 495, 497 [50 P.2d 796], that ''. . . shoeprints are so large and the points of similarity so obvious, the comparison . . . is a matter of nonexpert rather than of expert testimony,'' and urges that foundational evidence that the prints matched the shoes was not required because the jury was competent to make that comparison. *People* v. *Taylor, supra,* 4 Cal.2d 495, does not justify that conclusion. In *Taylor* a criminologist testified, without objection, that he made a comparison of the imprint left by the burglar and an imprint of defendant's shoe, pointed out the similarities, and expressed the opinion that the imprint left by the burglar was made by defendant's shoe. Defendant apparently contended on appeal that the trial court erred in permitting the expert to express an opinion that the imprint was made by defendant's shoe, for the court referred to the ''rule'' in other jurisdictions that an expert may not express the direct opinion that the shoes made the tracks and stated, ''The implication is that the expert's opinion, when given, even if uncontradicted, is not conclusive of the fact, but the jury may

---

[3]The one exception was *People* v. *Dwyer,* 24 Cal.App.2d 639, 642 [75 P.2d 653]. However, in that case defendant objected to such a foundation and the court was apparently under the mistaken impression that to allow any expert testimony would be conclusionary and invade the jury's domain. (See fn. 4, *infra.*)

consider the opinion evidence together with its own inspection of the physical evidence.[4] [fn. added] And this is, we think, the correct rule. The court's instruction to the jury in this case . . . was in harmony with this rule." (*People* v. *Taylor*, *supra*, 4 Cal.2d 495, 497.) Thus, while the court seems to imply that the expert should not have been permitted to express his opinion on the ultimate issue, the holding was simply that the jury was not bound by the expert's opinion, even if uncontradicted, and was properly so instructed.[5]

Although we have discovered no California case squarely holding that footprint evidence is inadmissible without either expert or lay testimony connecting the tracks with shoes worn by the defendant, such foundation is required in many other jurisdictions.[6] (29 Am.Jur.2d 427, 428; see cases collected in annotations, 31 A.L.R. 204; 35 A.L.R.2d 866, § 5.)

[4]The implication in the court's opinion that a qualified expert should not be permitted to express a direct opinion that the tracks were made by the shoes does not comport with the current law of this state in this area. Under recent decisions, the fact that an expert's opinion is on an ultimate issue of fact to be determined by the jury is not a ground for its exclusion. (*Corn* v. *State Bar*, 68 Cal.2d 461, 466 [67 Cal.Rptr. 401, 439 P.2d 313]; *People* v. *Polk*, 61 Cal.2d 217, 233 [37 Cal.Rptr. 753, 390 P.2d 641]; *People* v. *Cole*, 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435]; *Smith* v. *Lockheed Propulsion Co.*, 247 Cal.App.2d 774, 783 [56 Cal.Rptr. 128]; *People* v. *Lewis*, 91 Cal.App.2d 346, 350-351 [204 P.2d 919]; Witkin, Cal. Evidence (2d ed. 1966) pp. 392-397.) Section 805 of the Evidence Code provides: "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." Professor Wigmore refers to the "rule" mentioned in *People* v. *Taylor*, 4 Cal.2d 495 [50 P.2d 796], that an expert witness may testify to measurements and other common features in footprint identification but not offer a direct opinion that the shoes made the track as being "an absurd gag on witnesses." (7 Wigmore, Evidence (3d ed.) § 1977, p. 137, fn. 6.)

[5]While the instruction given is not set out in the opinion, we assume that it was one given in conformity with section 1127b of the Penal Code which reads:

"When, in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows:

"Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable.

"No further instruction on the subject of opinion evidence need be given."

[6]In *Herring* v. *State*, 122 Miss. 647 [84 So. 699, 703], the court rejected a witness' general statement that certain tracks were similar and stated that it was only competent to show the character of footprints and tracks where the witnesses are in a position to testify to the measurements of comparisons or any peculiarity. In *State* v. *Sigman*, 220 Iowa

There may be situations where evidence of similarity may not be necessary, e.g., where tracks lead from the scene of a crime to defendant. (See *People* v. *McCurdy, supra,* 68 Cal. 576, 583.) In such cases there is independent evidence linking defendant with the tracks. But where the fact that defendant made the tracks can only be established by a comparison of the tracks with defendant's shoes, the foundational requirement must be met. ■ Sufficient foundational evidence should be required to support a logical inference of identity from the common distinctive features of the footprint and the shoes. Professor Wigmore states: ". . . . No doubt a witness to identity of footmarks should be required to specify the features on which he bases his judgment of identity; and then the strength of the inference should depend on the degree of accurate detail to be ascribed to each feature and of the unique distinctiveness to be predicated on the total combination. Testimony not based on such data of appreciable significance should be given no weight. [Fn. omitted.]" (Wigmore, *supra,* p. 394; see *State* v. *Palmer,* 230 N.C. 205 [52 S.E.2d 908, 914]; compare *State* v. *Pinyatello,* 272 N.C. 312 [158 S.E.2d 596, 605-606].)

There is a sound policy for requiring foundational evidence that the footprint matches defendant's shoes. As Professor Wigmore points out, ". . . popular looseness of thought is apt to overestimate [the] probative value" of apparent similarities between the imprint and the shoes. (Wigmore, *supra,* p. 394.) Foundational proof, with opportunity for cross-examination, assures a fair evaluation of the evidence by the jury.

■ We conclude that the photographs of the footprints were erroneously received without proper foundation and that evidence of the "other offense" should have been excluded. Although the fact defendant was discovered on the Holmes'

---

146 [261 N.W. 538, 539], the Iowa Supreme Court reversed a burglary conviction where the evidence was a slip of paper at the scene of the crime bearing a heel print and defendant's shoes. The court said there was no evidence to show the exhibit had any distinctive peculiarities similar to defendant's shoes to distinguish it from footprints that could be made by any other shoes of the same brand. Also, in *State* v. *Storm,* 125 Mont. 346 [238 P.2d 1161, 1168] the Montana Supreme Court reversed a case where defendant's shoes and footprints were introduced but where, " 'No testimony was produced showing or tending to show that the footprints were made by the defendant.' " (*Kinnan* v. *State,* 86 Neb. 234 [125 N.W. 594, 595].) Some courts have analyzed the question in terms of insufficiency of the evidence where there is no evidence of a connecting factor between the defendant and the tracks. (*State* v. *Morrison,* 221 Iowa 3 [265 N.W. 355]; *Kinnan* v. *State, supra.*)

premises shortly after witnesses heard the sound of a screen being "punched out" raises a strong suspicion of guilt, it is our opinion, after a review of the entire record, that it is reasonably probable that a result more favorable to defendant would have been reached absent the errors. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) Identification of defendant as the one who left the partial heel print on the bed stand in the house was a crucial issue in the case. Admission of the photograph of the imprint without proper foundation connecting it with defendant's shoes was clearly prejudicial.

Judgment reversed.

McCabe, P. J., concurred.

GARDNER, J. pro tem.*—I dissent.

I

In my opinion the court committed no error in admitting evidence of the shoeprint and the tampered screen at 5818 Sycamore Street.

This evidence of the tampered screen—*and* the shoeprint—*and* the defendant's car (with the keys in it) which was parked in front of the address—was admissible as relevant circumstantial evidence developed by police investigation at the scene of the crime. Proper police investigation of a burglary need not stop at the property line. All of this evidence was relevant and showed, circumstantially, the appellant's identity and the method of operation carried out by him in the commission of the crime with which he was charged. It was all part of a continuing transaction, all part of a chain of circumstantial evidence discovered at the scene of a crime which tended by reasonable inference to establish appellant's guilt. It was not a prejudicial record of previous crimes committed by appellant in the conventional sense of "other offenses" (in spite of the concession of the Attorney General to the contrary at oral argument—a position in conflict with that set forth in his written brief which supports the above approach to the introduction of this evidence.)

II

In my opinion the appellant suffered no prejudice by the lack of oral testimony that the shoeprints found at the scene were similar to the shoes he was wearing that night. Admit-

*Assigned by the Chairman of the Judicial Council.

tedly, under the authorities discussed in the majority opinion, it would have been entirely proper, correct—and ritualistic— for a witness to have testified that he had examined the shoes and the photographs of the shoeprints and that they were similar and for him to have pointed out the similarities. Obviously this would have been necessary were the witness testifying to fingerprints. Fingerprint testimony has always been a matter of expertise.

But shoeprints are not a matter calling for expert testimony. In *People* v. *Taylor,* 4 Cal.2d 495 [50 P.2d 796], the Supreme Court in discussing shoeprints commented at p. 497: ''In those states where the subject has been considered, the trend of authority seems to be to the effect that by reason of the great practical differences between fingerprints and shoeprints, in that the shoeprints are so large and the points of similarity are so obvious, the comparison of shoeprints is a matter of nonexpert rather than of expert testimony . . . The implication is that the expert's opinion, when given, even if uncontradicted, is not conclusive of the fact, but the jury may consider the opinion evidence together with its own inspection of the physical evidence. And this is, we think, the correct rule. . . .''

It was stipulated that the sheriff's deputy who took the pictures of the shoeprints was a competent photographer. A proper foundation was laid that the photographs were accurate and fair reproductions of the shoeprints. All that was lacking was for a nonexpert witness (obviously a prosecution witness) to testify that he had examined the shoes and the shoeprints and that they were similar and to indicate those points which, in his opinion, were points of similarity. In view of the character of a shoeprint and its large size the jury was able to conclude without oral testimony that the shoe and the shoeprint either were or were not similar. So where has the appellant been harmed by the lack of nonexpert opinion as to similarity? As a matter of fact, he benefits. Had a nonexpert given his opinion as to similarity, the jury might have been influenced toward similarity by that opinion—good or bad. But here the jury was able to make its own determination as to similarity or dissimilarity, with the thinking process of the individual juror uninfluenced by the opinion of a nonexpert prosecution witness. Here, in view of the enlarged photographs showing the original size of the shoeprints and the introduction of appellant's shoes, a jury could reasonably make a determination as to whether or not the shoes and

shoeprints were similar without the aid of a nonexpert witness to explain the obvious.

I submit, therefore, that since the comparison of appellant's shoes and the shoeprints was not a matter of expert opinion but was a matter of primarily factual determination by the jury that the technical error, if any, in admitting the shoe and shoeprints without the conventional explanation was not prejudicial. I cannot find that this error, if it was error, resulted in a miscarriage of justice. Assuming it was error, I cannot find that it is reasonably probable that a result more favorable to the appellant would have been reached in the absence of this error. (Cal. Const., art. VI, § 13; *People v. Watson*, 46 Cal.2d 818, 836 [299 P.2d 243] ; *People v. Hamilton*, 60 Cal.2d 105, 136 [32 Cal.Rptr. 4, 383 P.2d 412].)

Our system of justice does not demand a perfect trial—only a fair one. In my opinion the appellant received a fair trial, free of prejudicial error, and the judgment should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1969. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.